UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SIR ANTONIO CROCKETT,

    Defendant.

Case No. 18-20090
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING DEFENDANTS'
MOTIONS TO SUPPRESS [36, 37]**

Sir Antonio Crockett was a passenger in a car being driven erratically. Two Genesee County Parks Rangers pulled the car over. They could see a Molotov cocktail on the rear floor board. Crockett was arrested. He agreed to speak with the authorities and made an incriminating statement. After being indicted on charges involving possession of a destructive device (ECF No. 1), Crockett now seeks to suppress the statements he made in his post-arrest interview, as well as the alleged Molotov cocktail seized from the car, as fruits of a poisonous arrest. He also complains about the officers' failure to electronically record his interview. Finding no constitutional violations, the Court will deny Crockett's Motion to Suppress Statement and Motion to Suppress Evidence. (ECF No. 36, 37.)

**I.**

On November 16, 2017, at approximately 4:25 am, Genesee County Parks Rangers Thomas Durant and Terry VanKeuren were in the vicinity of the 1300 block of Leland Street, near Hargott Avenue, in Flint, Michigan. (ECF No. 39-2, PageID.112.) They observed a gold, four-door Cadillac make an erratic turn and run two stop signs. (*Id.*; Mar. 20, 2019 Hrg. Tr. at 13–14, 20.)

As they pulled the vehicle over and illuminated it with their spotlight, they saw the passenger behind the driver's seat lean forward between the front seats. (ECF No. 39-2, PageID.112) VanKeuren also saw the front seat passenger, later identified as Crockett, hand a bottle to the back-seat passenger. (*Id*., PageID.113; Tr. at 15, 33, 48.) When the Rangers approached the vehicle, they observed a Molotov cocktail and red gas can in plain view on the floor board behind Crockett's seat. (*Id*.; Tr. at 16.) There were numerous other bottles in the back seat of the car. (Gov't Exh. 3.)

While Crockett was handcuffed in the police cruiser, Durant spoke with the two female occupants of the vehicle. The driver indicated that she and Crockett had smoked crack cocaine that evening. (ECF No. 39-2, PageID.113; Tr. at 20) She gave Durant permission to search the car. (ECF No. 39-2, PageID.113.) Crockett (and one of the women) were taken to the City of Flint lock-up and "lodged for the charge of attempted arson." (*Id*.; Tr. at 62.) The other occupant was taken to the Ranger Station. All three were interviewed.

One of the women again advised the interviewing officers that she and Crockett had been smoking crack cocaine. (*Id*., PageID.116.) They heard a gunshot and felt something hit the car. She thought that someone Crockett had been feuding with had shot at the car. (*Id*.) Crockett also directed her to drive to his uncle's house so he could get a gun. (*Id*.) But the uncle was not home. (*Id*.) They then drove to a gas station. She put some gas in the car and saw Crockett carrying a red gas can but did not see the Molotov cocktail. (*Id*.)

The other passenger told the officers that Crockett said "Baby shot the car" and that Crockett "was going to murder him" and everyone in the house. (*Id*., PageID.115.) When they were stopped by the Rangers, she said Crockett tried to hand her a bottle but she refused to take it and so Crockett placed it in the front seat with him. (*Id*.)

2

Crockett was interviewed by Flint detective Vicki Miller and Chief of Police of the Ranger Division Kevin Shanlian. Shanlian was under the mistaken impression that the interview with Crockett was being electronically recorded as soon as they entered the interview room. (Tr. at 57-58, 65.) He also brought a tape recorder with him, but Crockett refused to give a taped statement. (ECF No. 39-5, PageID.118; Tr. at 58, 60.)

At the outset of the interview, Shanlian advised Crockett of his *Miranda* rights, which Crockett said he understood. (*Id.*, PageID.117; Tr. at 56-57.) On the Rangers' *Miranda* form, Crockett placed his initials next to each right he was advised of and signed the waiver of rights. (ECF 39-6; Tr. at 56-57; Gov't Exh. 7.) He agreed to speak with the officers without a lawyer present. (*Id.*, PageID.117.) Shanlian told Crockett, "you know we saved you from committing a murder last night," to which Crockett responded, "You're right, I was high." (ECF No. 39-5, PageID.117; Tr. at 58-59.) But Crockett further advised that he was not feuding with anyone, did not know who shot at the car, and bought some gasoline for another vehicle. (ECF No. 39-5, PageID.117; Tr. at 59, 71.) He did admit going to his uncle's home to try to get a gun, which he knew he could not possess because of his criminal record. (*Id.*; Tr. at 60.)

Crockett was subsequently indicted in federal court for possession of explosives by a felon, possession of a destructive device by a felon, and possession of an unregistered destructive device. (ECF. No. 1.) He now seeks to suppress his post-arrest statements, especially that the officers prevented him from committing a murder, which he denies making. (ECF No. 37, PageID.91.) Crockett argues that the underlying arrest was unlawful and that his constitutional rights were further violated by the absence of any video recording of his post-arrest interview.

He requested an evidentiary hearing which the Court conducted on March 20, 2019. After considering the evidence at the hearing and the parties' briefing, the Court finds no basis to suppress the evidence seized from the Cadillac or Crockett's statement.

## II.

The Court begins with Crockett's argument that his statement and the Molotov cocktail were the fruits of an unlawful arrest. Crockett believes that, as one of several passengers in a car with multiple bottles, the officers lacked probable cause to arrest him.

"[A] vehicle stop by a police officer is a seizure within the meaning of the Fourth Amendment." *Bazzi v. City of Dearborn*, 658 F.3d 598, 603 (6th Cir. 2011) (internal quotation marks omitted). It is well established that a "police officer legally may stop a car when he has probable cause to believe that a civil traffic violation has occurred" or "reasonable suspicion of an ongoing crime." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (citation omitted). This determination should be made based "on the totality of the circumstances" which "includes a realistic assessment of the situation from a law enforcement officer's perspective." *Id*. (citations omitted).

The Rangers' reports and VanKeuren's testimony indicate that they observed the Cadillac in which Crockett was a passenger driving erratically and run two stop signs. These are civil infractions under Michigan law. *See* Mich. Comp. Laws §§ 257.626b and 257.671. So the Rangers had probable cause to pull over the vehicle. *See United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) ("a police officer may effect a traffic stop of any motorist for any traffic infraction"); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) ("[S]o long as the officer has probable

4

cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment.").

The Rangers also had the right to search the vehicle. First, the driver of the vehicle, who shares a last name with the registered owner of the vehicle, gave consent to Durant. (ECF No. 39-2, PageID.113.) Second, Crockett's counsel acknowledged Crockett's lack of standing to challenge the search. (Tr. at 7, 86.) Third, even assuming Crockett had standing, "under the well-known automobile exception, a warrantless search of a vehicle that has been stopped lawfully is permissible if the search is based upon probable cause." *United States v. Crumb*, 287 F. App'x. 511, 513 (6th Cir. 2008) (citation omitted). Also, "the plain view exception permits the warrantless seizure of an object provided that (1) the officer is lawfully positioned in a place from which the object can be plainly viewed; (2) the incriminating character of the object is immediately apparent; and, (3) the officer has a lawful right of access to the object itself." *United States v. Bishop*, 338 F.3d 623, 626 (6th Cir. 2003) (citing *Horton v. California*, 496 U.S. 128, 136–37 (1990)).

The Rangers had probable cause. Recall that "'[p]robable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is found to exist when there is a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *Id.*; *Crumb*, 287 F. App'x. at 513 (quoting *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006)). When the Rangers pulled the vehicle over, they observed—in plain view—what they reasonably thought to be a Molotov cocktail and a gas can. Both Michigan and federal law criminalize the possession of a destructive device, such as a Molotov cocktail. *See United States v. Cruz*, 270 F. App'x 393, 396 (6th Cir. 2008); *United States v. Franklin*, 298 F. App'x 477, 478–79 (6th Cir. 2008); Mich. Comp. Laws § 750.211a(1).

And having found a Molotov cocktail in the Cadillac, Crockett's arrest was supported by probable cause. The familiar test asks "whether, at the moment the arrest was made, . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *United States v. Harness*, 453 F.3d 752, 754 (6th Cir. 2006) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) And, as the Supreme Court has explained, an arresting officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id*. (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citations omitted); *see also United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991) ("[K]nowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendants."). In other words, the Court's inquiry is whether the officers had probable cause to believe Crockett was committing an offense, and not simply attempted arson as referenced in the police reports.

As suggested by the Government at the evidentiary hearing, Michigan criminalizes the possession of a Molotov cocktail. *See* Mich. Comp. Laws § 750.211a(1). A "'Molotov cocktail' means an improvised incendiary device that is constructed from a bottle or other container filled with a flammable or combustible material or substance and that has a wick, fuse, or other device designed or intended to ignite the contents of the device when it is thrown or placed near a target." Mich. Comp. Laws § 750.211a(3). "A container that is filled with gasoline and stuffed with a cloth that acts as a wick fits the ordinary definition of a device 'designed to explode.'" *People v. Ferrell*, 2005 Mich. App. LEXIS 2772, *5 (Mich. Ct. App. Nov. 10, 2015). As described by Ranger

VanKeuren and depicted in Government's Exhibit 6, the bottle the Rangers retrieved from the car was filled with gasoline, stuffed with a rag, and had a wick:



Crockett contends the Rangers lacked probable cause to arrest him because there were multiple occupants and bottles in the vehicle and the contraband was found in the custody of the backseat passenger and not Crockett. (ECF No. 36, PageID.84, 86). Regardless of the number of bottles in the car, one of them had all of the hallmarks of a Molotov cocktail. And it was in close proximity to Crockett. Possession of a Molotov cocktail, says Michigan law, "can be either actual or constructive, and also may be joint as well as exclusive. Constructive possession exists where the totality of the circumstances demonstrates a sufficient nexus between the defendant and an item. '[A] person has constructive possession if there is proximity to the article together with indicia of control.'" *People v. Ramsey*, 2000 Mich. App. LEXIS 1041, *3-4 (Mich. Ct App. Date 2000). Crockett was in the front passenger seat. The Molotov cocktail was not far away on the rear-passenger-side floor board. As Ranger VanKeuren testified, "The bottle was right directly behind [Crockett] on the floor so he was within reaching distance of it had he turned around." (Tr. at 43.) He also observed Crockett hand a bottle to the back-seat passenger. (Tr. at 15.) He believed Crockett was attempting to hide the bottle. (*Id*. at 16.) As the Government argues, "the officers could make the common-sense determination that Crockett sought to hide and avoid responsibility

7

for the most incriminating item in the car." (ECF No. 39, PageID.106.) On the totality of the circumstances, the Rangers had probable cause to arrest Crockett for possessing a Molotov cocktail.

But Crockett takes one more stab at suppressing the Molotov cocktail and his statement. He argues that the members of the Genesee County Parks and Recreation Park Ranger Division who effectuated the arrest were outside their jurisdiction—they were six blocks beyond the scope of the Division's property. And, says Crockett, suppression of evidence is the proper remedy for this lack of jurisdiction. (ECF No. 41; Tr. at 83-85.)

This argument fails for several reasons. First, the Government contends that even if Crockett's arrest was somehow unlawful, this does not enable him to challenge the search of the car and so there is no basis to suppress the Molotov cocktail. Crockett does not dispute this point. And he offers no case law that says suppression of this evidence would still be a proper remedy if the Rangers lacked jurisdiction to make the arrest. Second, it is true that the Genesee County Parks Ranger Division has a policy that "Rangers shall not take law enforcement action outside of Commission properties." (ECF No. 36, PageID.87; Def. Ex. 1.) But there are exceptions, including where "[t]he Ranger observes a felony in progress or an erratic driver where immediate action needs to occur to prevent loss of life or property." *Id*. The "erratic driver" exception fits this case. Ranger VanKeuren observed the Cadillac take a turn at too high a rate of speed. (Tr. at 41.) And the car failed to stop at not one, but two stop signs. And even if the erratic-driver exception did not apply, the two Rangers had authority beyond their normal jurisdiction: they had been deputized by the Genesee County Sheriff. (Tr. at 10, 52.) VanKeuren and Shanlian testified that this gave the Rangers the authority to enforce all laws in Genesee County. (*Id*. at 11, 41, 52.) And lastly, the Circuits appear split on the issue of whether an arresting officer's lack of authority under state law

to conduct an otherwise constitutionally valid arrest constitutes an unreasonable seizure under the Fourth Amendment. *Compare, e.g.*, *United States v. Jones*, 185 F.3d 459, 463 (5th Cir. 1999) (noting that the relevant question when considering suppression of evidence is whether officials violated the Fourth Amendment and concluding that state law deficiencies in arrest were irrelevant), *with Ross v. Neff*, 905 F.2d 1349, 1353–54 (10th Cir. 1990) ("A warrantless arrest executed outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause.").

In *Pasiewicz v. Lake County Forest Pres. Dist.*, 270 F.3d 520 (7th Cir. 2001), the plaintiff, after his acquittal on a public indecency charge, filed a § 1983 action alleging, in part, that the arresting officers acted outside the scope of their jurisdiction. The Seventh Circuit held, in an oft-cited case, that a forest-preserve officer's arrest of a defendant in violation of a state statute setting forth his territorial authority did not rise to the level of constitutional violation. *Id*. at 526–27.

The Sixth Circuit has likewise held that law enforcement officials acting beyond the scope of their authority under state law do not necessarily violate the Fourth Amendment. *See Guest v. Leis*, 255 F.3d 325, 334 (6th Cir. 2001) (search and seizure by officers acting outside their jurisdiction under state law did not violate the Fourth Amendment); *Pyles v. Raisor*, 60 F.3d 1211 (6th Cir. 1995) (holding that a warrantless arrest supported by probable cause but in violation of state law was not actionable under § 1983 because while "a state ought to follow its law, . . . to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law." (citation omitted)).

Thus, the fact that deputized Rangers may have violated an internal policy by arresting Crockett in another's vehicle several blocks outside of their jurisdiction does not warrant suppression of the evidence or Crockett's statement.

In sum, because the officers had probable cause to stop the erratically driven vehicle and probable cause to arrest Crockett who was found in close proximity to a Molotov cocktail, Crockett's statement and the Molotov cocktail were not obtained in violation of the Fourth Amendment.

### III.

The day after Crockett was arrested, he was interviewed by Chief Ranger Kevin Shanlian and Flint Police Detective Vicki Miller. During the interview, Shanlian says he told Crockett, "you know we saved you from committing a murder last night" and Crockett responded by saying, "You're right, I was high." Crockett denies making the statement. Miller took notes during the interview and prepared a written report. (ECF No. 39-5, PageID.117-118; Tr. at 71-74.) But there is no video or audiotape of the interview to verify one version or the other. Shanlian thought the interview was being recorded. He did not realize the equipment in the interview room was not turned on. And while Shanlian had a tape recorder with him, Crockett, unlike the other passengers in the car, declined to give a taped statement.

Crockett does not challenge the voluntariness of his interview statements. (Tr. at 86-87.) Instead, he says the absence of a recording is a violation of his Fifth Amendment and due process rights. (*Id.*) But he also acknowledges law in the Sixth Circuit that "is directly contrary to his position." He further recognizes that the Sixth Circuit "has held that there exists no constitutional requirement to videotape or audio tape interrogations. *See United States v. Smith*, 319 F. App'x. 381, 384 (6th Cir. 2007) (citing *United States v. Dobbins*, 165 F.3d 29 (6th Cir. 1998))." (ECF No. 37, PageID.97.) But in Crockett's view, these cases are "outdated." (*Id.*)

In *Smith*, the Sixth Circuit found no "merit to the defendant's contention that his 'Mirandized' statements to police should have been suppressed because they were not videotaped

10

during the interrogation in his jail cell." *Smith*, 319 F. App'x. at 384. The Court explained "there simply is no authority to support this argument" and that, like its unreported decision in *Dobbins*, other circuits "had also held that the police are not constitutionally required to videotape or audiotape such interviews." *Id*. at 384–85 (citing *United States v. Tykarsky*, 446 F.3d 458, 477 (3d Cir. 2006) ("Whatever the merits of the policy arguments in favor of requiring the recording of interrogations may be, it is clear that such recording is not mandated by the United States Constitution."); *United States v. Smith-Baltiher*, 424 F.3d 913, 925-26 (9th Cir. 2005) (rejecting defendant's argument that his post-arrest statements should be suppressed for failure to electronically record the interrogation, despite equipment to do so, because the Ninth Circuit had previously declined to mandate electronic recording of post-arrest statements); *United States v. Montgomery*, 390 F.3d 1013, 1017 (7th Cir. 2004) (declining to extend *Miranda* to require the electronic recording of all interrogations); *United States v. Yunis*, 273 U.S. App. D.C. 290, 859 F.2d 953, 961 (D.C. Cir. 1988) ("[T]here is no constitutional requirement that confessions be recorded by any particular means.")); *see also United States v. Meadows*, 571 F.3d 131, 147 (1st Cir. 2009) (2009) ("[T]here is no federal constitutional right to have one's custodial interrogation recorded.").

Crockett refers to the Sixth Circuit law as "outdated" because access to audio recording equipment at that time "was not at our ready disposal." (*Id*.) But he provides no support. In any event, the quality or availability of the technology is not the basis of the courts' rulings. While a recording would certainly aid in analyzing the voluntariness of a confession or incriminating statement, its absence alone is not a Fifth Amendment or due process violation. Crockett will have every opportunity to challenge the reports and testimony of the interviewing officers. Suppression is not the proper relief.

## IV.

In sum, there was no violation of Crockett's Fourth Amendment rights because authorities had probable cause to arrest him after they saw him hand a bottle to a passenger in the rear of the vehicle they were driving in and found a Molotov cocktail in that area. Nor does the lack of a recording of Crockett's post-arrest interview constitute a Fifth Amendment violation. Thus, there is no basis to suppress the evidence seized from the vehicle or Crockett's statement in his post-arrest interview. His motions to suppress evidence and statements (ECF No. 36 and 37) are DENIED.

IT IS SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: April 15, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, April 15, 2019, using the Electronic Court Filing system and/or first-class U.S. mail.

s/William Barkholz
Case Manager